(March 14, 1995)

■ CITY OF NEW YORK, Respondent, v JOB-LOT PUSHCART et al., Defendants, and JA-RU, Appellant. [623 NYS2d 851] —Order, Supreme Court, New York County (Alice Schlesinger, J.), entered on or about April 12, 1994, which, *inter alia,* granted plaintiff's motion for a preliminary injunction against defendant JA-RU, enjoining it from violating Administrative Code of the City of New York § 10-131 (g), affirmed, without costs.

The IAS Court properly found that Administrative Code § 10-131 (g), which, *inter alia,* governs the sale, possession, manufacturing, distributing and transporting of toys or imitation pistols or revolvers, was not preempted by 15 USC § 5001, and Federal regulation 15 CFR part 1150, which also governs, *inter alia,* the manufacture, shipping, and transport of any toy, look-alike and imitation firearms.

Consideration of issues arising under the Supremacy Clause of US Constitution article VI "start[s] with the assumption that the historic police powers of the States were not to be superseded by Federal Act unless that was the clear and manifest purpose of Congress" *(Rice v Santa Fe El. Corp.,* 331 US 218, 230). "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law" *(Cipollone v Liggett Group,* 505 US 504, 516). A conflict occurs either because "compliance with both federal and state regulations is a physical impossibility" *(Florida Avocado Growers v Paul,* 373 US 132, 142-143), or because the State law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" *(Hines v Davidowitz,* 312 US 52, 67). Here, rather than being inconsistent, the code complements the Federal statute inasmuch as both statutes may be satisfied simultaneously. In this regard, defendant argues that the Federal statute allows what the Administrative Code prohibits, namely, the sale of black, blue, silver or aluminum guns, provided they contain the required blaze orange plug or blaze orange band markings prescribed by the Federal regulations. However, it is feasible to make a red or purple toy gun with an orange band, thus satisfying both laws. Defendant also claims that the Federal statute expressly provides for a blaze orange plug or a band marking on the barrel of the toy, recessed no more than 6 millimeters from the muzzle end of such barrel (15 USC § 5001 [b] [1], [2]; 15 CFR 1500.3 [b]), while Administrative Code § 10-131 (g) requires that the barrel of such guns "be closed with the same material of which the

toy or imitation pistol or revolver is made for a distance of not less than one-half inch from the front of said barrel." It gives an example that "if a plastic blaze orange plug is inserted in a metal toy gun, it would be violative of the Code on its face." However, a toy gun with a closed barrel and an orange blaze band, made in a color other than those prohibited by the Administrative Code, would also satisfy both laws. As defendant concedes, the Federal statute allows for a "blaze orange band" around the perimeter of the gun barrel on functioning water or light-emitting guns in lieu of plugging in the barrel in its entirety. Moreover, as the IAS Court properly found, the purpose of the Federal statute and Administrative Code are the same: to prevent the sale of toy guns so closely copied from actual weapons as not to be readily discernible as toys, which plaintiff has shown have been utilized in the commission of violent crimes.

Accordingly, the court properly found that plaintiff was likely to prevail in its effort to enforce the Administrative Code against defendant. In addition, its conclusion that irreparable harm would occur without the injunction, based on the role toy guns play in the commission of crimes, and its determination that the equities balance in plaintiff's favor, on the grounds that the City has a right to protect its citizenry, were well founded.

We have reviewed defendant's other claims and find them to be without merit. Concur—Murphy, P. J., Ellerin and Williams, JJ.

Rosenberger and Rubin, JJ., dissent in a memorandum by Rubin, J., as follows: At issue on this appeal is whether a section of the Administrative Code of the City of New York that regulates the sale, possession and use of toy guns (§ 10-131 [g]) is preempted by Federal legislation entitled "Penalties for entering into commerce of imitation firearms" (15 USC § 5001; *Coalition of N. J. Sportsmen v Florio,* 744 F Supp 602, 607). The Administrative Code provision, enacted into law in 1955, makes it unlawful "to sell or offer for sale, possess or use or attempt to use or give away, any toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver, unless said imitation or toy pistol or revolver shall be colored in colors other than black, blue, silver or aluminum, and further provided that the barrel of said toy or imitation pistol or revolver shall be closed with the same material of which the toy or imitation pistol or revolver is made for a distance of not less than one-half inch from the front end of said barrel" (§ 10-131 [g]). The Administrative

Code also requires "the name of the manufacturer or some trade name, mark or brand by which the manufacturer can be readily identified" to be stamped legibly on the item *(ibid.)*.

Plaintiff brought this action seeking to permanently enjoin defendants from continuing to violate Administrative Code § 10-131 (g) and from maintaining what it contends is a common law nuisance. Supreme Court granted a motion by plaintiff to preliminarily enjoin defendants from distributing the toy guns which, according to plaintiff's brief, are "entirely black in color * * * except for one orange piece at the tip" and fail to carry "any stamp bearing the name of the manufacturer, trade name or brand". Defendants assert, however, and plaintiff does not deny, that the toys are in full compliance with Federal legislation governing their coloring and markings.

In 1988, Congress enacted 15 USC § 5001, providing detailed requirements regarding the appearance of non-functional firearms. Insofar as pertinent to the facts of this case, the law prohibits "any person to manufacture, enter into commerce, ship, transport, or receive any toy, look-alike, or imitation firearm" without a "blaze orange plug inserted in the barrel * * * recessed no more than 6 millimeters from the muzzle end of the barrel of such firearm" (15 USC § 5001 [a], [b]). The statute states that: "The provisions of this section shall supersede any provision of State or local laws or ordinances which provide for markings or identification inconsistent with provisions of this section provided that no State shall—(i) prohibit the sale or manufacture of any look-alike, nonfiring, collector replica of an antique firearm developed prior to 1898, or (ii) prohibit the sale (other than prohibiting the sale to minors) of traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure" (15 USC § 5001 [g]).

It is apparent from even a cursory examination of the Administrative Code provision that its requirements for the marking and identification of toy firearms are inconsistent with those contained in the Federal statute. It is also hard to imagine a more specific expression of Congressional intent than the preemption of local ordinances that "provide for markings or identification inconsistent with provisions of this section" (15 USC § 5001 [g]). Undeterred by either the obvious inconsistency or the intent of Congress, Supreme Court held that the Administrative Code provision is not inconsistent with Federal law because "making a toy gun, red or purple, or

yellow or green and putting a manufacturer's label on it could simultaneously be done by a manufacturer together with the insertion of an orange plug, that is if the manufacturer wanted his products sold in the New York City market."

It is irrelevant that a manufacturer might be able to comply with the requirements of both Federal and local legislation. As this Court has noted, preemption involves a two-tiered analysis, the first element of which is "whether Congress has indicated the intent to preclude State regulation of the activities" addressed in its enactment *(People v Calandra,* 164 AD2d 638, 641, *lv denied* 77 NY2d 992). Here, the intent of Congress to supersede local legislation regulating the appearance of toy guns is apparent from the face of the statute. In attempting to limit the scope of preemption, Supreme Court relies on cases dealing with implicit, not express, preemption that are inapposite under the circumstances presented by this matter *(see, Cipollone v Liggett Group,* 505 US 504; *Florida Avocado Growers v Paul,* 374 US 132).

In this case, analysis does not proceed to the second tier, which is that, "irrespective of any intent by Congress to exclude State regulation, 'a state statute is void to the extent that it actually conflicts with a valid federal statute' " *(People v Calandra, supra,* at 643, quoting *Ray v Atlantic Richfield Co.,* 435 US 151, 158). But, even at this level, the reasoning employed by Supreme Court is flawed. In deciding if there is an actual conflict, the material consideration is not whether a defendant may be able to simultaneously comply with the requirements of the respective enactments, but that "conduct which is lawful under the Federal statute may be illegal under State law", thereby rendering the local provision a nullity *(supra,* at 643). Here, it is not contended that the toy guns placed into commerce by defendants violate the provisions of 15 USC § 5001, only that they violate the provisions of the Administrative Code. Even if the intent to preempt local laws had not been expressly stated by Congress, defendants' sale of the toys is only illegal under the terms of the local provision, and it is therefore superseded by the Federal legislation.

The only case interpreting 15 USC § 5001 brought to this Court's attention is *Coalition of N. J. Sportsmen v Florio* (744 F Supp 602, *supra).* That decision merely applies the statutory bar against State laws prohibiting the sale of "traditional B-B, paint ball, or pellet-firing air guns" (15 USC § 5001 [g] [ii]) which are specifically exempted from its operation. As interpreted by Commerce Department regulations, the statute

applies to "toy, look-alike, and imitation firearms" resembling weapons produced since 1898 and does not apply to "(a) Non-firing collector replica antique firearms * * * (b) Traditional B-B, paint-ball, or pellet-firing air guns * * * and (c) Decorative, ornamental, and miniature objects" that resemble firearms (15 CFR 1150.1).

In construing the intent of Congress, Supreme Court misapprehends the language of the preemption provision. By limiting the local ordinances superseded to those that "provide for markings or identification inconsistent with provisions of this section" (15 USC § 5001 [g]), the statute does not render preemption of local measures that purport to regulate the *appearance* of a toy gun less than absolute. The limitation merely gives the locality the latitude to regulate *other* aspects of the sale of toy guns, and their sale could presumably be banned altogether. However, the locality is absolutely precluded from enforcing regulations, such as those contained in the Administrative Code provision, that bear on such aspects of the toy's design as its color, its markings and the specifications of the muzzle plug.

It was an abuse of discretion to grant plaintiff's motion for a preliminary injunction. It is well settled that the grant of preliminary relief requires the movant to demonstrate a likelihood of ultimate success on the merits, immediate irreparable injury in the event the relief sought is denied and a preponderance of the equities to effect substantial justice and preserve the status quo *(Grant Co. v Srogi,* 52 NY2d 496, 517). In view of the explicit preemption provision of the Federal statute and the obvious inconsistency between its provisions and those of the Administrative Code, plaintiff failed to demonstrate a likelihood of success on the merits. In addition, plaintiff failed to establish that irreparable injury was immediate. While there is certainly the potential for commission of a crime with a toy that closely resembles an operable weapon, the loss of sales to defendants from the imposition of the injunction is both real and immediate. As Supreme Court acknowledged in its memorandum decision, plaintiff's efforts in exacting defendants' compliance with Administrative Code § 10-131 (g) resulted in a loss of sales during the 1993 holiday season, and that impact has now extended through the 1994 holiday period.

It is unfortunate that an innocuous object such as a toy gun can be an instrument of violence and even death. In the dark, even a crude imitation of a gun can be employed to commit

robbery. The victim of such a ruse may assume the weapon is real and shoot and kill the robber. Police responding to the report of a crime in progress, suddenly confronted with a child carrying a toy weapon, may make the same mistake with tragic consequences to all concerned. However, Congress has weighed the opposing factors of commerce and public safety and enacted a statute encompassing its determination of the competing policy considerations. The enactment is obviously less than a perfect solution to the problem it is designed to alleviate. It is, however, "the supreme Law of the Land" (US Const, art VI, cl 2), and conflicting State law is " 'without effect' " *(Cipollone v Liggett Group,* 505 US, *supra,* at 516).

Accordingly, the order of Supreme Court, New York County (Alice Schlesinger, J.), entered on or about April 12, 1994, which granted plaintiff City of New York's motion for a preliminary injunction, should be reversed and the motion denied, without costs.