OPINION OF THE COURT
Ciparick, J.
Since 1955, New York City has outlawed the sale, possession or use of any toy or imitation gun which substantially *165 resembles an actual firearm because of the toy’s potential for nefarious exploitation (see, Administrative Code of City of NY § 10-131 [g]; Proceedings of NY- City Council, at 24 [Jan. 18, 1955]). Only toy guns that are not blue, black, silver or aluminum in color, bear an identifiable trade name or mark, and contain a solid plug in the barrel can be sold, possessed or used in New York City (see, Administrative Code § 10-131 [g]). At issue is whether these conditions are preempted by the 1988 Federal Toy Gun Law. We conclude that Congress has not expressly or impliedly preempted local regulation of the markings on toy guns, and that the conditions set forth in Administrative Code § 10-131 (g) are not incompatible or inconsistent with those provided in the Federal Toy Gun Law in that compliance with both is not impossible. Indeed, compliance with the Administrative Code conditions furthers the public safety aim of the Federal statute. Therefore, we affirm the order of the Appellate Division and answer the certified question in the affirmative.
I.
The City instituted this action against defendants, entities that place toy guns into the New York City stream of commerce, to permanently enjoin the manufacture, distribution, transportation, sale and possession of toy weapons in violation of Administrative Code § 10-131 (g). Evidently, the toy guns confiscated from defendants duplicate the semiautomatic assault pistols frequently used in the commission of crimes, are black in color, and do not bear any mark identifying the manufacturer. In opposition to plaintiffs order to show cause seeking a preliminary injunction, defendant-appellant JA-RU, Inc., a national distributor and marketer of toy guns, moved for a declaration that Administrative Code § 10-131 (g) was preempted by the Federal Toy Gun Law (15 USC § 5001) and its implementing regulations (15 CFR 1150.1 et seq.) (collectively, the Federal Toy Gun Law), arguing that the City’s action contravened the Federal statute regulating toy weapons. JA-RU represented that it distributes toy guns that comply with the markings approved by the Secretary of Commerce, which require that the toy contain a "blaze orange solid plug permanently affixed to the muzzle end of the barrel and *166 recessed no more than 6 millimeters from the muzzle end” (15 CFR 1150.3 [a]).
Supreme Court preliminarily enjoined defendants from selling and distributing toy guns in violation of Administrative Code § 10-131 (g), and denied JA-RU’s motion by declaring that Administrative Code § 10-131 (g) is not preempted by 15 USC § 5001. The Appellate Division affirmed, with two Justices dissenting (see, City of New York v Job-Lot Pushcart, 213 AD2d 210), and certified the question, "Was the order of the Supreme Court, as affirmed by this Court, properly made?”
On this appeal, JA-RU strenuously argues that Congress’s intent to preempt all State and local laws relating to toy guns is plain on the face of 15 USC § 5001 (g). According to JA-RU, Congress delineated a comprehensive scheme of identification and markings that cannot be superseded by a different State or local scheme. Because Administrative Code § 10-131 (g) prohibits what is permitted under the Federal Toy Gun Law, JA-RU asserts, the Administrative Code provision is inconsistent with the Federal Toy Gun Law. JA-RU posits that preemption of the incompatible City law comports with "one of the [Federal statute’s] essential purposes * * * a uniform scheme of national regulation.” We disagree.
II.
The premise of JA-RU’s argument is the well-settled rule that the Supremacy Clause of the United States Constitution (US Const, art VI, cl [2]) invalidates State or local laws that "interfere with, or are contrary to” Federal law (Gibbons v Ogden, 9 Wheat [22 US] 1, 211). However, the conclusion urged by JA-RU — that the Federal Toy Gun Law preempts Administrative Code § 10-131 (g) — does not result from an application of traditional preemption principles but from the economic impact on JA-RU resulting from the ban on the distribution of its toy guns in New York City.
The threshold issue in the preemption analysis is whether the subject Federal legislation intrudes on traditional police powers reserved to the States (see, Cipollone v Liggett Group, 505 US 504, 516). Historically, the regulation of health, safety and welfare has been the province of the States (see, Toy Mfrs. v Blumenthal, 986 F2d 615, 617). The United States Supreme Court has decreed that unless Congress manifestly and clearly intends to preempt the States’ exercise of jurisdiction over matters relating to the welfare of their citizens, the States’ po *167 lice powers are not to be superseded by a Federal act (see, Rice v Santa Fe El. Corp., 331 US 218, 230; see also, Fidelity Fed. Sav. & Loan Assn. v De la Cuesta, 458 US 141, 152-153; Auto Workers v Wisconsin Bd., 351 US 266, 274-275 ["States are the natural guardians of the public against violence * * * We would not interpret an act of Congress to leave them powerless to avert * * * emergencies without compelling directions to that effect”]; Florida Avocado Growers v Paul, 373 US 132, 146-147; NY Const, art IX, § 2 [c] [ii]). Therefore, the "purpose of Congress is the ultimate touchstone” of preemption analysis (Retail Clerks v Schermerhorn, 375 US 96, 103).
Because it is uncontroverted that Administrative Code § 10-131 (g) represents a valid exercise of the police powers delegated to the City by the State Constitution and the Municipal Home Rule provisions (see, People v Judiz, 38 NY2d 529, 531), the efficacy of the City ordinance turns on whether Congress has preempted all State and local regulation of toy guns pursuant to 15 USC § 5001 (g) (see, Florida Avocado Growers v Paul, 373 US, at 142, supra; see also, Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 107; People v De Jesus, 54 NY2d 465, 468; People v Lewis, 295 NY 42, 49-50).
As we summarized in People v Pymm (76 NY2d 511, 519, cert denied 498 US 1085) there are three ways in which a Federal law can preempt a State or local law: one, by express provision in the Federal statute; two, by inference, where the Federal legislative scheme is so pervasive and the character of the obligations imposed leaves no room for the State or local government to legislate; and three, to the extent that the State or local law actually conflicts with the Federal law, for example where compliance with both is impossible or adherence to the State or local law would thwart the objectives of its Federal counterpart (internal citations omitted; see also, Barnett Bank v Nelson, 117 US —, 116 S Ct 1103, 1108-1109).
We turn first to a consideration of the specific language of preemption employed by Congress in the Federal Toy Gun Law.
A.
The preemption provision in the Federal Toy Gun Law provides that
"The provisions of this section shall supersede any provision of State or local laws or ordinances which provide for markings or identification inconsistent *168 with provisions of this section provided that no State shall—
"(i) prohibit the sale or manufacture of any lookalike, nonfiring, collector replica of an antique firearm developed prior to 1898, or
"(ii) prohibit the sale (other than prohibiting the sale to minors) of traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure.” (15 USC § 5001 [g].)
The sweep of the Federal Toy Gun Law’s preemption clause is not as far-reaching as JA-RU and the dissenters below contend by urging that the statutory language explicitly preempts the field and ends the inquiry (see, City of New York v Job-Lot Pushcart, 213 AD2d, at 213, supra). Rather, the plain language employed by Congress demonstrates that only State regulation of replicas of antique collector firearms, B-B guns, paint ball guns, or pellet-firing air guns is expressly preempted under 15 USC § 5001 (g), which bars any State from prohibiting the sale of such devices, and with respect to antique replicas of pre-1898 firearms, the manufacture of such devices (see, 15 USC § 5001 [g] [i], [ii]; Coalition of N. J. Sportsmen v Florio, 744 F Supp 602, 608-609).
The clearly defined reach of this provision compels the conclusion that Congress did not intend to supersede all local regulation of markings on toy guns. Where "Congress has considered the issue of pre-emption and has included * * * a provision explicitly addressing that issue * * * 'there is no need to infer congressional intent to pre-empt [other] state laws from the substantive provisions’ of the legislation. * * * Congress’ enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted” (Cipollone v Liggett Group, 505 US, at 517, supra [internal citation omitted]; see also, Vatore v Commissioner of Consumer Affairs of City of N. Y., 83 NY2d 645, 650). Similarly, when we considered whether a State environmental statute superseded a town ordinance on the same subject, we rejected the proposition that the "mere fact that the State deals with a subject [means] it automatically pre-empts it” (Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683; see also, People v Lewis, 295 NY, at 50, supra).
The limited scope of the preemption clause is confirmed by the comments of the legislation’s sponsor, Senator Robert Dole, made during the Senate debate that "[a]t the suggestion of the *169 California Senators, the preemption section has been modified to accommodate the new California law” (134 Cong Rec S 15531, S 15535 [Oct. 11, 1988]). The very fact that the preemption clause in the Federal statute was modified before adoption, to permit a recently enacted California statute to stand, constitutes an explicit acknowledgment of the validity of State regulatory measures and provides compelling evidence that Congress was not impliedly imposing a pervasive, preemptive regulatory scheme. JA-RU’s assertion, then, that the essential purpose of the Federal Toy Gun Law is to promote a "uniform system of national regulation” rings hollow. This contention is further undermined when JA-RU’s true intention — the unimpeded flow of toy guns through interstate markets — is juxtaposed against the actual goal of the Federal Toy Gun Law — guarding the public safety, which was also the motivating objective for the City Council’s adoption of Administrative Code § 10-131 (g) in 1955 (see, 134 Cong Rec, at S 15534 [statement of Senator Dole that the purpose of his amendment was to "allow continued production, sale and distribution of (toy guns), while at the same time reducing the potential for misuse as much as possible” as "a few incidents have actually occurred to date involving the criminal misuse of toy or imitation guns”]; 134 Cong Rec H 10071 [Oct. 12, 1988] [statement of Representative Moorhead, same as above]; Proceedings of Council of NY City, at 24 [Jan. 18, 1955]). However laudable a national public safety campaign regulating the sale arid use of realistic toy guns may be, it remains that Congress did not enact the Federal Toy Gun Law to supplant all State and local measures. The issue then narrows to whether the conditions set forth in Administrative Code § 10-131 (g) "provide for markings or identification inconsistent with provisions” (15 USC § 5001 [g]) of the Federal Toy Gun Law to the extent that there is "such actual conflict between the two schemes of regulation that both cannot stand in the same area” (Florida Avocado Growers v Paul, 373 US, at 141, supra).
B.
On the State level, "inconsistency has been found where local laws prohibit what would have been permissible under State law or impose prerequisite additional restrictions on rights under State law, so as to inhibit the operation of the State’s general laws” (New York State Club Assn. v City of New York, 69 NY2d 211, 217, affd 487 US 1, quoting F.T.B. Realty Corp. v Goodman, 300 NY 140, 147-148 [internal quotations *170 omitted]; see also, Florida Avocado Growers v Paul, 373 US, at 143, supra; Vatore v Commissioner of Consumer Affairs of City of N. Y., 83 NY2d, at 649, supra; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d, at 682, supra). Likewise, where Congress has not expressed an intent to supersede all State or local regulation in a field, a State or local law will he preempted if it is impossible to comply with both the local and Federal law (see, Florida Avocado Growers v Paul, 373 US, at 142-143, supra), or the State or local law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress (see, Hines v Davidowitz, 312 US 52, 67; Barnett Bank v Nelson, 117 US, at —, 116 S Ct, at 1109, supra).
The Federal Toy Gun Law only supersedes State or local laws that "provide for markings or identification inconsistent with” its terms. The additional conditions imposed by Administrative Code § 10-131 (g) do not conflict with the conditions enumerated in the Federal Toy Gun Law. As the Appellate Division noted "it is feasible to make a red or purple toy gun [which bears the manufacturer’s trade name and contains] an orange [plug], thus satisfying both laws” (City of New York v Job-Lot Pushcart, 213 AD2d, at 210, supra). Therefore, it is not impossible to comply with both the Federal Toy Gun Law and Administrative Code § 10-131 (g). That the sale of JA-RU’s toy guns is only illegal under the terms of the local provision is not a basis for preemption of the City law, as the dissenters below opine, because "this general principle applies only where the Legislature has shown its intent to preempt the field” (Vatore v Commissioner of Consumer Affairs of City of N. Y., 83 NY2d, at 651, supra). Indeed, compliance with both the Federal and local laws at once furthers the intent of Congress and achieves the public safety objective underlying each measure. The Federal Toy Gun Law seeks to impose some regulatory guidelines, in part, to override local laws that completely banned toy guns from certain jurisdictions (see, 57 Fed Reg 48451 [1992] [codified at 15 CFR 1150.1 et seq.]; 134 Cong Rec, at S 15534). In response to these local bans, the Hobby and Toy Industry of America and the Toy Manufacturers of America pressed congressional members for passage of the Federal Toy Gun Law, which by its terms incorporates markings voluntarily adopted by the industry (see, 134 Cong Rec, at S 15534). Against this backdrop, the Federal Toy Gun Law is not an attempt to dominate the field. States and localities can erect a regulatory framework that expands upon the Federal founda *171 tian, and to the extent that Administrative Code § 10-131 (g) complements the Federal Toy Gun Law, the City’s regulatory conditions can coexist with the Federal statute.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
Order affirmed, etc.