[890 NYS2d 799]

B & L Concourse Housing Assoc., Petitioner, v Stephanie Elliot et al., Respondents.

Civil Court of the City of New York, Bronx County, October 7, 2009

APPEARANCES OF COUNSEL

*Kraus & Kraus, LLP*, Long Island City, for petitioner. *Legal Services NYC-Bronx* (*Kathryn Neilson* of counsel), for respondents.

**OPINION OF THE COURT**

VERNA L. SAUNDERS, J.

Petitioner commenced the within nonpayment proceeding seeking rents allegedly owed by the above-named tenants. The disputes are varied but center around the rent regulatory status of the subject premises. Petitioner claims that the premises are not regulated by rent stabilization law and are instead federally regulated through an agreement between itself and the United States Department of Housing and Urban Development (HUD) and the City of New York Department of Housing Preservation and Development (HPD). Petitioner further claims that by virtue of this agreement, federal regulations preempt state rent regulation law and thus, the premises are not rent stabilized.

Respondents dispute this and claim that the premises are rent stabilized and that the federal regulation involved applies only to the financing of the properties and creates a multi-tiered system of regulation, which includes state rent stabilization protections. The resulting claim of respondents is that petitioner is unlawfully seeking rent in excess of the amount contracted by the parties and unjustifiably seeks a rent increase in violation of rent stabilization law. On this basis, respondents move for an order: consolidating the proceedings; granting leave for respondents to serve an amended answer; granting summary judgment, pursuant to CPLR 3212, on the basis that petitioner seeks rent in excess of the contract rent and last legal registered rent; dismissal of the petition, pursuant to CPLR 3211 (a) (2), in that the rent demand is defective; and, dismissal, pursuant to CPLR 3211 (a) (7), on the basis that petitioner failed to properly plead the regulatory status of the premises. Petitioner opposes the motion.

Pursuant to CPLR 602, the matters are herein consolidated for disposition, as determined at oral argument.

In addition, leave is granted to file the proposed amended answer annexed to the moving papers. CPLR 3025 (b) grants broad discretion to the court to permit amendment of answers. (*Unger v Leviton*, 5 Misc 3d 925 [Sup Ct, Nassau County 2004].) As petitioner has failed to oppose that portion of the motion, the amended answer is deemed served and filed.

According to petitioner, the subject premises were gut-rehabilitated in the late 1980s-early 1990s through federal funding from a now extinct source, through a program which is no longer in existence. The Housing Development Action Grant (HODAG) program issued grant assistance for the project pursuant to an agreement with the United States Department of Housing and Urban Development and the City of New York Department of Housing Preservation and Development. Petitioner contracted with the Department of Housing and Urban Development to rehabilitate the subject premises and agreed through this federal funding scheme to set aside 20% of the units (21 units) as "very low" income housing. At issue herein is whether state or federal regulations govern rent calculation and subsequent rent increases for the four "very low" income units involved in the instant case.

Determining a preemption question requires an analysis of the three ways in which federal law can preempt state or local law: by express provision in the federal statute; by inference, in the case where the federal scheme is pervasive and exhaustive as to the federal obligations imposed; or in the event of conflict between the laws, such that compliance with both is impossible or local or state compliance would thwart the objectives of the federal counterpart. (*See Rosario v Diagonal Realty, LLC*, 9 Misc 3d 681, 692 [2005], *affd* 32 AD3d 739 [2006], *affd* 8 NY3d 755, *cert denied* 552 US —, 128 S Ct 1069 [2008], citing *City of New York v Job-Lot Pushcart*, 88 NY2d 163 [1996].)

While the regulatory status of the premises is critical for determining the rights and obligations of the parties, here many factors impede an obvious determination of this issue. Little counsel is provided by the terms of the HODAG program itself as it primarily outlines the financial scheme involved. However, the material facts are essentially undisputed. The HODAG program at the subject premises provided for a set aside of 21 units for "very low" income tenants. As to the "very low income" units at issue here, it is unclear how the initial rents were calculated. It is also unclear whether an evaluation of the income status of the tenants was performed at the initial lease

signing. It is, however, undisputed that the petitioner offered rent-stabilized leases to respondents for nearly the entire length of each tenancy.[1] At a subsequent time, HODAG leases were offered to tenants, seeking to increase the rent, allegedly pursuant to HODAG calculations.[2] Prior to petitioner offering the HODAG leases which led to the instant litigation, petitioner offered rent-stabilized renewal leases, presumably based on the schedule of allowable Rent Guidelines Board increases. The HODAG program is in fact now defunct. And it further appears to this court that the 20-year program limit is fast approaching, if not already here. All these factors create a circumstance where it is difficult to determine the continuing viability of the HODAG guidelines in a situation where the guidelines were never followed.

An analysis of the current state of the law provides little direct guidance. In *43-45 W. 129th St. HDFC v Doe* (NYLJ, Mar. 2, 1992, at 31, col 2), the court evaluated whether a building was exempt from rent regulation where the building was formerly owned by New York City and a participant in HPD's Division of Alternative Management Program (DAMP). The court determined that the tenant's receipt of benefits in a building which had an agreement with the federal HODAG program had no effect on the rent regulation status of the apartment. Specifically, the court determined that the local rent regulations were not preempted by the Section 17 Housing Development Grant Program (42 USC § 1437*o*; *see 43-45 W. 129th St. HDFC v Doe*).

The court acknowledges that in that case, the respondents occupied the premises prior to the owner's participation in the federal grant program and were found to retain their regulated status, succeeding to the "former" rent-regulated tenancy, while the respondents here entered into possession after the regulatory agreement was executed. However, the court finds instructive the determination on the limited question of whether the regulations of the contracting agency, there HPD, preempted the local rent control and rent stabilization law. The *43-45 W. 129th St.* court found that federal law did not preempt the local law.

---

1. Rent-stabilized renewal leases and rent calculation are not income sensitive, but rather are based on an allowable increase determined by the Rent Guidelines Board (RGB).

2. This does not appear to have been based on a certification or recertification of respondents' income.

*223 Chelsea Assoc., LLC v Dobler* (NYLJ, May 18, 2001, at 18, col 2 [App Term, 1st Dept]) stands for the proposition that once the premises are no longer supervised by HUD, the unit becomes subject to rent stabilization, pursuant to section 2520.11 of the Rent Stabilization Code (RSC) (9 NYCRR). At issue in *Dobler* was a federally funded project in which participation in the federal scheme was terminated by virtue of satisfaction of the HUD mortgage. Petitioner opted to terminate the tenancies in holdover proceedings alleging that the lease terms expired. It was alleged, therefore, that since HUD's involvement in the premises had ended there no longer existed a valid basis for petitioner to contend exemption from local rent regulation. The court found that section 2520.11 of the RSC applied to those tenancies and that the petitioner had failed to set forth a proper basis for the eviction by virtue of having failed to plead the correct regulatory status of the premises.

Here, the parties rely upon letters from HUD Deputy Secretary Hale to resolve the question as to whether the premises are governed by rent stabilization law. However, the letters are not instructive as to the matter at hand. The letters clarify the status of apartments where families occupying the "very low" income units no longer qualify as "very low" income based on a subsequent increase in income. That is not the circumstance described here. As to other issues the letters might address, they are vague and ambiguous as to determining the regulatory status of apartment units other than those where occupants are "over-income."

As to preemption, there is no express preemption provision in the federal statute. In fact, there is an exception which applies in the case of rent stabilization. (*See* 42 USC § 1437*o* [f].) However, RSC § 2520.11 exempts housing accommodations supervised by HPD where the federal rule is inconsistent with the Code's rent scheme. The court finds that the HODAG rent-setting scheme is not inconsistent with the scheme set by the RSC. In fact, DHCR Advisory Opinion No. 91-1, "Multi-Tier Rent Orders," contemplates the instant fact patterns where more than one rent-setting calculation may be necessary due to requirements of various funding sources. Specifically, the Advisory Opinion provides guidance in the case where rent setting is adjusted periodically by means other than

guidelines board orders[3] due to funding from federal programs, including HODAG. (*See* exhibit C, affirmation in reply, DHCR Advisory Op No. 91-1, at 2, ¶ 1 [4].) This provides a framework for implementation of both rent-setting schemes: where federal law sets a maximum collectible rent, assessed annually by way of income certification, and RGB increases permitted by the RSC, which caps the amount collectible, subject to federal rules which permit periodic adjustment based on income. Accordingly, the court finds that the state and federal regulations are compatible and not inconsistent and, therefore, not preempted by federal law.

Based on the foregoing, respondents', except Carmen Frias', motions are granted and the petitions are dismissed on the basis that they seek rent in excess of the contract rent and last legal registered rent. In addition, the petitions are fatally defective in that an improper rent is demanded and the petitions fail to properly plead the regulatory status of the premises. As to Carmen Frias, the petition is dismissed based on the first affirmative defense in the amended answer and the fatally defective rent demand.

---

3. Rent Guidelines Board.