*696 OPINION OF THE COURT
John P. Colangelo, J.
In this residential nonpayment proceeding, respondent tenant Sue Ellen Formisano moves to dismiss the petition of petitioner landlord Seminara Pelham, LLC, on the ground that petitioner was not entitled to terminate its participation in the section 8 program and therefore tenant owes only the nonsection 8 portion of her rent, which she has religiously tendered. Petitioner opposes respondent’s motion and has, in essence, cross-moved for summary judgment.
Factual and Procedural Background
The facts necessary to decide the motion and cross motion are not in dispute. Respondent has resided since 1995 in apartment A-6 at 504 Pelham Road in New Rochelle. Her tenancy is and has always been subject to the Emergency Tenant Protection Act of 1974 (the ETPA). Since at or about the inception of her tenancy, respondent has received a rental subsidy pursuant to the federal section 8 program (42 USC § 1437f), and she and her landlord have participated in the section 8 program. In or about June 2003, approximately eight months before the expiration of tenant’s then current two-year lease term, petitioner notified her that it would opt out of its participation in the section 8 program at the end of her lease term in February 2004. By written notice dated June 25, 2003, the local section 8 office advised tenant that as of March 1, 2004 section 8 assistance would no longer be provided to subsidize her rent for the apartment. In November 2003, petitioner sent to respondent an offer for a renewal lease that excluded the landlord’s section 8 participation. In January 2004, respondent signed the renewal lease, but refused to agree to the condition in the lease to the effect that petitioner would no longer accept a section 8 subsidy. After the renewal lease began, tenant tendered only the portion of her rent that would have corresponded to the former nonsection 8 share. Petitioner then brought this nonpayment proceeding.
By her motion, tenant seeks, in essence, to have this court overturn its decision in 30 Eastchester LLC v Healy (2002 NY Slip Op 40066[U] [2002]), and its progeny, which include other decisions of this court as well as administrative opinions of Westchester County Division of Housing and Community Development. (See Mayco, LLC v Boreland, NYLJ, Jan. 28,2004, at 20, col 3; 185 Union Ave. Realty Corp. v Harris, NYLJ, July 9,2003, *697 at 28, col 1.) Healy held that the 1996 congressional amendment to section 8 removed the so-called “Endless Lease” provision of section 8 leases by permitting a landlord to terminate its participation in the section 8 program, for any reason, at the conclusion of a lease term (the 1996 amendment). Subsequent cases, such as 185 Union Ave. Realty Corp. v Harris, further refined Healy by holding that the landlord must give a tenant adequate notice of the landlord’s intention to terminate its section 8 participation prior to the lease’s termination date.
In her motion to dismiss, tenant argues that the effect of Healy was to improperly preempt state law governing lease renewal for leases covered by the ETPA by effectively excising from a proffered renewal lease a “material” term and condition — section 8 participation by the landlord. Tenant contends that the 1996 amendment should not be enforced because there was no express intention by Congress to “preempt” this aspect of local law lease regulation.
For the reasons set forth below, this court declines to overrule Healy and holds that a federal statute that plainly alters the obligation of a party to participate in a federally regulated and federally funded program need state nothing more than that in order to effectuate its purpose.
Discussion
Respondent’s principal contention — that the 1996 amendment should not be enforced because it did not expressly state that it would preempt conflicting state laws and regulations — is without merit. The law is clear that in deciding the issue of preemption, the fact that the federal law at issue does not contain an express preemption provision is not the end of the inquiry. As the Second Department articulated in Matter of Mott v New York State Div. of Hous. & Community Renewal (211 AD2d 147, 151 [2d Dept 1995]), if the federal law lacks such a preemption provision, then
“one must look to whether the State law ‘conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States’ (Malone v White Motor Corp., 435 US 497, 504). A State law can also be invalid if it ‘ “stands as an obstacle to the accomplishment and execution of the full purposes and objectives” of the federal law’ (Liva *698 das v Bradshaw, 512 US [107, 120], quoting Brown v Hotel Empls., 468 US 491, 501).”
Applying this analysis to the 1996 amendment, it is clear that a failure to enforce its terms despite the ETPA regulation at issue would both “conflict with federal law” and “would frustrate the federal scheme” as intended by Congress.
First, the argument that Congress, by passing the 1996 amendment, did not intend to overrule the state law of lease renewals to the extent of eliminating the “endless lease” is belied by the language of the 1996 amendment itself. The 1996 amendment — reaffirmed in 1998 when it was made a permanent part of the Housing Act — is itself entitled “Endless Lease.” This, together with the unmistakable effect of the amendment’s terms, leaves no doubt of the evident congressional intent — to permit a landlord to “[terminate] its participation in the Section 8 program with respect to that tenant, when the term of the tenant’s lease expires.” (Healy at *7.)
Nor did the 1996 amendment signal an untoward, wholesale federal intrusion into the landlord-tenant relationship. Indeed, nothing in the 1996 amendment suggests that Congress sought to micromanage the landlord-tenant relationship to any significantly greater extent than had previously obtained. Both parties who participate in section 8 — landlord and tenant — are required to sign a lease in a federally approved form with certain federally mandated provisions, and both parties agree to be bound not only by the lease, but by the panoply of single spaced regulations promulgated under section 8 and contained in the Code of Federal Regulations (see 24 CFR 982.1 et seq.).
The 1996 amendment changed none of these regulations, and changed no aspect of the ongoing landlord-tenant relationship during the lease term covered by section 8 — such as the minimum services a landlord is required to provide, the grievance procedure peculiar to section 8 and other federally funded housing programs, and basing the rent on area market rates. On the contrary, the sole purpose and effect of the 1996 amendment was to clarify the seminal issue of who will participate in the program itself — that is, to specify that a landlord may, at the end of the lease term, decide to forgo the burdens and benefits of its section 8 participation, just as a tenant may make a similar decision. The elements of the landlord-tenant relationship, once both parties decide to continue it, remain undisturbed. Since section 8 is a federal program, for which the federal government provides the rent subsidy and for which the federal *699 government has promulgated a host of regulations, it is, to this court, axiomatic that federal law should, or at least may if Congress so chooses, have a say in performing the gatekeeping function of who should participate in the program itself.
Indeed, under the current statutory and regulatory scheme— separate and apart from the 1996 amendment — the federal government is actively involved in this gatekeeping function through the section 8 administrative offices and representatives. Such offices and representatives screen potential landlords and tenants both, all of whom must pass muster under a variety of qualifications in order to be approved for section 8 participation, and must, once chosen, conform their respective conduct to section 8 regulations in order to maintain their status as section 8 participants. (See 24 CFR 982.1 et seq.) The 1996 amendment does nothing more than further refine this federal gate-keeping function by permitting the landlord to, at its initiative, have the gate raised to permit its escape from section 8 when the then current lease term is over.
In short, to contend that the 1996 amendment unfairly intrudes upon state law governing the landlord-tenant relationship and therefore should not be deemed to preempt the state law dealing with this one aspect of lease renewal misses the point in two important respects: (1) that Congress clearly intended, despite any countervailing state law, to permit a landlord to opt out of the section 8 program at the end of the lease term, as evidenced by the title — “Endless Lease” — and the content of the 1996 amendment itself, and (2) that section 8 is a federal program, federally regulated and federally funded. Whether the 1996 amendment is wise or, in view of the current housing situation in many parts of the country, responsible legislation, can be debated in the public forum. However, what Congress sought to do by passing the 1996 amendment is clear, and in the face of these fundamental facts, to deny Congress a role in deciding the threshold issue of program participation would have this court make a legislative rather than a judicial decision.
The New York cases that come to a conclusion contrary to Healy rely upon a principle articulated in cases with facts distinguished from Healy and the instant case. For example, the ICings County Supreme Court case of Kouznetski v Verga Assoc. (NYLJ, July 10, 2002, at 29, col 2) refused to apply the 1996 amendment, citing the 1995 case of Matter of Mott (211 AD2d 147 [2d Dept 1995]), for the proposition that “[i]t has been held *700 that generally the Section 8 legislative scheme does not preempt State Law regarding rent regulation.” (Kouznetski at 29, col 1 [emphasis supplied].) Other cases that are contrary to Healy either predate the 1996 amendment or also rely upon this rationale — that the section 8 legislative scheme has been held not to affect state or local “rent regulation.” (See, e.g., Marine Terrace Assoc. v Zeimbekis, 122 Misc 2d 921 [Civ Ct, Queens County 1983]; Tower W. Assoc. v Derevnuk, 114 Misc 2d 158 [Civ Ct, NY County 1982]; Bran-Trav Dev. LLC v Matus, NYLJ, Aug. 11, 2004, at 19, col 3.)
Matter of Mott — the case on which the post-1996 cases of Kouznetski and Bran-Trav rely — dealt with state and local regulation of the gross amount of rent that a landlord participating in section 8 could charge its tenant. However, Mott and its rationale and, as a consequence, the cases relying upon it, are distinguishable on two related grounds: Mott concerned an application of general section 8 regulations to the specific issue of the amount of rent that could be charged. As such, Mott addressed issues of “rent regulation” rather than the issue of who will participate in the section 8 program itself. Conversely, the 1996 amendment is a specific congressional directive aimed at addressing a particular issue of congressional concern — the “Endless Lease” and whether a landlord would be able to free itself from participation in that federal program.
There is to this court a fundamental difference between regulating an existing relationship — the ongoing relationship between landlord and tenant — on the one hand, and dictating whether a separate, distinct relationship — the relationship between the landlord and a federal program — should exist at all. What is involved with the 1996 “Endless Lease” amendment is not merely “rent regulation,” as the Kouznetski case suggests. Both parties here would concede that the gross amount of monthly rent that petitioner can charge tenant under the renewal lease remains governed and limited by the ETPA regulations — as Mott, the case on which the Kouznetski case relies, held that it should. However, the instant case presents a difference from Mott in kind rather than degree, a gatekeeping as opposed to a regulating regime. Rather than regulating the bilateral landlord-tenant relationship, Congress, by the 1996 amendment, decided to afford landlords an opportunity to choose, after the lease term was over, whether they wished to reenter the tripartite relationship of section 8 — that of landlord-tenant/federal program — or revert to the more typical bilateral *701 relationship of landlord and tenant. That Congress intended to provide landlords with this choice is clear from the title and effect of the 1996 amendment. This court sees no principled reason why this evident federal intent should not be effectuated when it is not the relationship between landlord and tenant— the relationship expressly regulated by the ETPA — that is primarily affected by the amendment, but rather the relationship between the landlord and the federal program.
Conclusion
In the instant case, as in Healy, respondent received several months’ notice of the landlord’s intention to opt out of section 8 participation, and a written notice to that effect from her local section 8 office eight months before her lease expired. And here, as in Healy, the landlord tendered to tenant a lease that specifically excluded section 8 participation. Thus, here as in Healy, tenant was required herself to pay the full amount of the rent due under the lease.
Accordingly, since tenant has concededly failed to pay the portion of her rent previously subsidized through section 8, petitioner is entitled to a judgment of possession and a money judgment for the rental arrears.