OPINION OF THE COURT
Joan A. Madden, J.
In these three consolidated actions for declaratory and injunctive relief, seven rent-stabilized tenants are seeking to resolve the identical issue as to whether their landlords are authorized to decline continued participation in the federal section 8 rent subsidy program.[1]
Plaintiffs move for summary judgment seeking a declaration that the defendant landlords are obligated to continue accepting their section 8 rent subsidies. Plaintiffs contend that under *683 New York State’s rent stabilization laws they are entitled to renewal leases with section 8 subsidies, as the section 8 rent subsidy constitutes a material term and condition of their expired rent-stabilized leases. Plaintiffs further argue that under New York City’s J-51 tax law, the defendant landlords who are receiving J-51 tax benefits are prohibited from discriminating against section 8 recipients, and are, therefore, required to accept plaintiffs’ section 8 rent subsidies. In opposition, the defendant landlords argue that the amendment to the federal section 8 statute, which eliminated the so-called “endless lease” requirement, permits them to “opt out” of the section 8 program, and any provisions to the contrary in New York State’s Rent Stabilization Code and New York City’s J-51 law are preempted by the federal section 8 statute.
As discussed below, these issues have been resolved by a number of trial level courts in New York City and Westchester County, with a split in the opinions as to whether a landlord has the right to opt out of the section 8 program. To date, no appellate court has addressed and reconciled the conflict.[2] I. Factual Background
The facts essential to the determination of this issue are undisputed. Plaintiffs are seven individual tenants who all reside in rent-stabilized apartments and all receive section 8 rent subsidies. Some have had section 8 subsidies since the inception of their tenancies, while others became eligible for the subsidies sometime thereafter. The five defendants are the plaintiffs’ landlords, and four of the five landlords are receiving tax abatements under New York City’s J-51 tax abatement program.[3] The defendant landlords have all notified the plaintiff tenants and the New York City Housing Authority (NYCHA) *684 that they no longer wish to participate in the section 8 program, and will not be accepting the rent subsidy payments administered by the NYCHA. In notifying the tenants, the landlords gave them an opportunity to remain in their apartments and offered them rent-stabilized leases; however, the tenants would be responsible for paying the full stabilized rent amount without the section 8 subsidy. It is not disputed that none of the plaintiff tenants can afford their apartments without the section 8 subsidy.
In each instance, the NYCHA sent the landlord a letter stating its “legal position” that, under New York State law, landlords are not entitled “to opt out of the Section 8 program.” The NYCHA also sent a letter to the tenants explaining that “[w]e understand that your landlord has recently informed you that he or she has decided not to renew the Section 8 contract with the NYCHA for your apartment ... It is the position of the NYCHA that your landlord is not legally entitled to do that.” On July 22, 2003, the NYCHA’s Director of Leased Housing Department, Gregory A. Kern, issued a memorandum (LHD No. 03-26), addressing the legal issues arising from the attempts by landlords to opt out of section 8 for rent-stabilized tenants. Expressing the NYCHA’s disagreement with certain recent decisions from courts in Westchester County and from the Division of Housing and Community Renewal (DHCR), which found that a landlord is entitled to opt out of section 8, the memorandum explains that the NYCHA has “always taken the position that Section 8 subsidy constitutes an essential condition” of a rent-stabilized lease, and, therefore, the landlord cannot offer the tenant a renewal term without also renewing the section 8 subsidy. The memorandum states that the NYCHA
“discovered that several of our Section 8 landlords are attempting to implement those court and DHCR opinions . . . [and] are offering some Section 8 tenants renewal terms without Section 8 subsidy and declining to renew the corresponding HAP [Housing Assistance Payment] Contracts with NYCHA. Some landlord organizations are also promoting the view among our landlords that they can do this if they wish.”
The memorandum continues:
“Upon advi[c]e from the NYCHA Law Department, I am announcing here NYCHA’s position that Section 8 landlords in New York City are not entitled to *685 follow the DHCR and Westchester court opinion[s]. We believe those opinions were wrongly decided, whereas the earlier opinions by State courts in New York City were correct . . . [S]taff shall continue to enforce our standing policy, and all inquiring landlords shall be advised, that our landlords of occupied rent stabilized apartments must offer a continuation of Section 8 subsidy as a condition of renewals with their tenants. We shall abide by this policy unless and until ordered to do otherwise by a State court with jurisdiction in New York City.”
II. Section 8 Federal Rent Subsidy Program
Before examining the issues presented for determination, some background as to purpose and procedures of the section 8 program is instructive. In 1974, Congress amended federal housing law to create what is commonly known as the section 8 housing assistance program, with the intention of aiding “low-income families in obtaining a decent place to live, by subsidizing private landlords who would rent to low-income tenants.” (Cisneros v Alpine Ridge Group, 508 US 10, 12 [1993] [internal quotation marks and citation omitted], quoting 42 USC § 1437f [a].)
“Under the program, tenants make rental payments based on their income and ability to pay; the Department of Housing and Urban Development (HUD) then makes ‘assistance payments’ to the private landlords in an amount calculated to make up the difference between the tenant’s contribution and a ‘contract rent’ agreed upon by the landlord and HUD.” (Id.)
Section 8 authorizes the Secretary of HUD to enter into annual contribution contracts with local public housing authorities, which in this instance is the NYCHA, so that they may make assistance payments to owners of existing buildings.
When the NYCHA deems a tenant eligible for section 8 assistance, the NYCHA issues a voucher, and the tenant must then locate an apartment and a landlord “willing to lease the unit under the [section 8] program.” (24 CFR 982.302 [a], [b].) Upon locating an apartment, the tenant executes a lease with the landlord, which includes “the HUD-prescribed tenancy addendum.” (24 CFR 982.305 [b] [1] [ii].) Generally, the tenant is responsible for paying no more than 30% of his or her household income toward the monthly rent. (42 USC § 1437f [o] [2] [A].) At the same time, the landlord enters into a separate HAP *686 contract with the NYCHA, by which the NYCHA agrees to pay the landlord a subsidy equal to the balance of the fair market rent. (24 CFR 982.1, 982.451.)
In 1996, Congress enacted a temporary amendment to the section 8 law, which inserted an introductory clause to 42 USC § 1437f (d) (1) (B) (ii), providing that “during the term of the lease, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause” (emphasis added; Pub L 104-134, tit II, § 203 [c] [2], 110 US Stat 1321, 1321-281 [1996]). In 1998, Congress made this statutory amendment permanent. (Pub L 105-276, tit II, § 549 [a] [2] [A], 112 US Stat 2461, 2607 [1998].)[4]
As evident from the legislative history of these amendments, the change in language adding the phrase “during the term of the lease,” was intended to eliminate the so-called “endless lease rule,” which required landlords to renew leases for section 8 tenants, and prevented them from terminating a section 8 tenancy unless they instituted court proceedings and established “good cause” within the meaning of 42 USC § 1437f (d) (1) (B) (ii). (See S Rep No. 21, 105th Cong, 1st Sess, reprinted in 1997 WL 282462; HR Rep No. 76, 105th Cong, 1st Sess, reprinted in 1997 WL 205589; S Rep No. 195,104th Cong, 1st Sess, reprinted in 1995 WL 768616; HR Conf Rep No. 353, 104th Cong, 1st Sess, reprinted in 1995 WL 689613; see also Carol Rickert & Assoc. v Law, 132 NM 687, 691, 54(P3d 91, 95 [Ct App 2002]; Franklin Tower One, L.L.C. v N.M., 157 NJ 602, 725 A2d 1104 [Sup Ct 1999].) Congress also repealed the rule commonly referred to as “take-one, take-all,” which had required a landlord who accepted one section 8 tenant to accept all section 8 tenants. Congress believed that these and other statutory requirements[5] were “administratively burdensome to landlords” and that the “reforms will make participation in the section 8 tenant-based program more attractive to private landlords and *687 increase housing choices for lower income families.” (144 Cong Rec S11833, at SI1844 [Oct. 8, 1998], reprinted in 1998 WL 698664.) While recognizing that the endless lease and take-one, take-all rules “were created to protect assisted households from owner discrimination,” Congress specifically stated that it did “not anticipate that the repeal of these rules [would] adversely affect assisted households because protections will be continued under State, and local tenant laws.” (S Rep No. 21, 105th Cong, 1st Sess, at 36, reprinted in 1997 WL 282462; accord S Rep No. 195, 104th Cong, 1st Sess, at 32, reprinted in 1995 WL 768616; Franklin Tower One, L.L.C. v N.M., 157 NJ at 612, 725 A2d at 1109.)
III. Procedural Background
As a result of the amendments to the section 8 law, the federal statutory restrictions on an owner’s right to terminate a section 8 tenancy are now limited to the extent of prohibiting only a termination “during the term of the lease.” (42 USC § 1437f [d] [1] [B] [ii].) Relying on this language in the federal statute, defendant landlords assert that they are entitled to “opt out” of the section 8 program, and will no longer accept section 8 benefits on behalf of the plaintiff tenants once the term of each tenant’s last rent-stabilized renewal lease has expired.
Plaintiffs commenced the instant actions seeking injunctive and declaratory relief, regarding their landlords’ refusal to continue accepting their section 8 subsidies. Plaintiffs’ consolidated motions seek summary judgment on their claims for a declaration that defendant landlords are not permitted to terminate their participation in the section 8 program, where as here, the tenants are protected by the renewal requirements of the Rent Stabilization Law, and most of the landlords are receiving J-51 tax benefits. As noted above, plaintiffs assert that under New York’s Rent Stabilization Code, the landlord of a rent-stabilized apartment must provide the tenant with a renewal lease “on the same terms and conditions as the expired lease,” and the receipt of a section 8 subsidy is a material term and condition of a rent-stabilized lease. Plaintiffs further assert that under New York City’s J-51 tax abatement law, landlords benefitting from J-51 tax abatements are prohibited from discriminating against section 8 recipients, and, as a result, any defendant landlord receiving a J-51 tax abatement is required to accept the tenant’s section 8 rent subsidy.
In opposing the motions, defendant landlords contend that the amendments to the section 8 law, eliminating the endless *688 lease requirement, give them the absolute right to opt out of participating in the section 8 program, and, as a result, they are now permitted to refuse to accept the plaintiff tenants’ section 8 rent subsidies. Specifically, defendants argue that the provisions of New York’s Rent Stabilization Law requiring automatic lease renewals, conflict with and, therefore, are preempted by the federal section 8 statute, which no longer mandates an “endless lease.” As to New York City’s J-51 tax abatement law, defendants argue that this local law simply prohibits a landlord from discriminating against section 8 tenants by initially refusing to rent to them, and does not prevent a landlord from ceasing to participate in the federal section 8 program. Defendants also argue that plaintiffs’ interpretation of the J-51 law would essentially “nullify” and “frustrate Congressional mandates” that landlords are free to discontinue section 8 participation.
Based upon a review of the relevant statutes, regulations, case law and legislative history, this court concludes that defendant landlords are required to offer plaintiff tenants renewal leases with section 8 rent subsidies, as defendants’ refusal to continue accepting plaintiffs section 8 subsidies violates both the letter and spirit of the provisions of New York City’s J-51 tax abatement law which protect tenants from discrimination based on section 8 status (Administrative Code of City of NY § 11-243), and the provisions of New York State’s rent stabilization laws which protect a rent-stabilized tenant’s right to a renewal lease on the same terms and conditions as the expired lease (Rent Stabilization Code [RSC] [9 NYCRR] § 2522.5 [g] [1]).
IV Preemption Generally
At the outset, the court must resolve the threshold question of federal preemption. “[P]re-emption is not to be lightly presumed” (California Fed. Sav. & Loan Assn. v Guerra, 479 US 272, 281 [1987]), and “the presumption [is] that Congress did not intend to preempt the States’ power to regulate matters of local concern.” (Matter of Holtzman v Oliensis, 91 NY2d 488, 494 [1998].) Moreover, federal courts have permitted states to impose greater restrictions than those imposed by federal law (see e.g. California Fed. Sav. & Loan Assn. v Guerra, supra), and New York courts have found that state laws imposing stricter requirements than federal law are not necessarily preempted (see e.g. City of New York v Job-Lot Pushcart, 88 NY2d 163 [1996], cert denied sub nom. JA-RU v City of New York, 519 US 871 [1996]).
*689 As a general proposition, courts in New York and other jurisdictions, including the highest courts in Connecticut, New Jersey and Massachusetts, have held that the federal section 8 legislative scheme does not preempt state tenant protection laws. (See e.g. Matter of Mott v New York State Div. of Hous. & Community Renewal, 211 AD2d 147 [2d Dept 1995], appeal dismissed 86 NY2d 836 [1995]; Kouznetski v Verga Assoc., NYLJ, July 10, 2002, at 29, col 2 [Sup Ct, Kings County]; Commission on Human Rights & Opportunities v Sullivan Assoc., 250 Conn 763, 772-774, 739 A2d 238, 245-246 [1999]; Franklin Tower One, L.L.C. v N.M., 157 NJ 602, 615-619, 725 A2d 1104, 1111-1113 [Sup Ct 1999]; Attorney Gen. v Brown, 400 Mass 826, 511 NE2d 1103 [1987]; Stevenson v San Francisco Hous. Auth., 24 Cal App 4th 269, 29 Cal Rptr 2d 398 [1994]; but see Seminara Pelham, LLC v Formisano, 5 Misc 3d 695 [New Rochelle City Ct 2004]; Knapp v Eagle Prop. Mgt. Corp., 54 F3d 1272, 1282 [7th Cir 1995].)
V New York City’s J-51 Law
Turning first to New York City’s J-51 tax abatement law, any question of federal preemption has been eliminated by the federal section 8 regulation which explicitly states that nothing in the section 8 scheme is intended to preempt state and local laws prohibiting discrimination against section 8 tenants. (24 CFR 982.53 [d].)
In an effort to provide landlords with an incentive to improve and rehabilitate their buildings, and maintain and increase the supply of urban housing stock, New York City enacted the so-called “J-51” law (Administrative Code § J51-2.5 [now § 11-243]), which gives multiple dwelling owners tax abatements and exemptions for certain enumerated projects, to offset any increase in real property taxes that would otherwise result from the improvements. (See Matter of 31171 Owners Corp. v New York City Dept. of Hous. Preserv. & Dev., 190 AD2d 441, 442-443 [1st Dept 1993]; Matter of Acropolis Gardens Realty Corp. v Department of Hous. Preserv. & Dev., 175 AD2d 242, 243 [2d Dept 1991]; Kraebel v New York City Dept. of Hous. Preserv. & Dev., 959 F2d 395, 398 [2d Cir 1992], cert denied 506 US 917 [1992].) As one court explains, “the City of New York has determined that certain improvements to residential apartment buildings are worth encouraging, and to do so, it has provided significant public subsidies for private undertakings.” (Id.)
Since its enactment, the J-51 law has included a nondiscrimination clause binding property owners participating in the J-51 *690 program. Over time, the law has been amended to expand the classes of protected individuals, and the current law, as amended in 1993, provides in pertinent part as follows:
“No owner of a dwelling to which the benefits of this section shall be applied, nor any agent, employee, manager or officer of such owner shall directly or indirectly deny to any person because of race, color, creed, national origin, gender, sexual orientation, disability, marital status, age, religion, alienage or citizenship status, or the use of, participation in, or being eligible for a governmentally funded housing assistance program, including, but not limited to, the section 8 housing voucher program and the section 8 housing certificate program, 42 U.S.C. 1437 et seq., . . . any of the dwelling accommodations in such property or any of the privileges or services incident to occupancy therein.” (Administrative Code § 11-243 [k] [emphasis added]; 4301 Realty LLC v Yurovskaya, Civ Ct, Kings County, Feb. 4, 2005, Index No. L&T 106482/02.)
The legislative history confirms that the proposed law was intended to
“make clear that when an owner receives tax benefits under the J-51 program, that owner may not discriminate against potential tenants on the basis of gender, sexual orientation, citizenship status, disability, or a tenant being the recipient of Section 8 vouchers or other federal housing aid . . . I applaud . . . the bill’s primary sponsors ... for their efforts to ensure that all housing, including private housing receiving public subsidies or tax benefits, is available to all New Yorkers, especially to those who are most in need.” (Statement of Mayor David Dinkins, June 1, 1993, Intro. No. 393-A.)
In October 1999, final regulations implementing the 1998 amendments to the section 8 statute were promulgated by HUD, the federal agency responsible for administering the section 8 program. (64 Fed Reg 56894 [1999].) As of 2000, the regulations have included a provision stating that section 8 is intended to have absolutely no effect on state and local laws prohibiting discrimination based on section 8 status. (Id.) Specifically, the following language was added to 24 CFR 982.53, which is entitled “Equal opportunity requirements”: “Nothing in part *691 982 [governing the section 8 voucher program] is intended to pre-empt operation of State and local laws that prohibit discrimination against a Section 8 voucher-holder because of status as a Section 8 voucher-holder.”[6] (24 CFR 982.53 [d].)
In accord with the express terms of 24 CFR 982.53 (d), this court is bound to determine that the antidiscrimination provisions of the City’s J-51 law are not preempted by the federal section 8 statutory scheme. The plain language of the J-51 law and its legislative history unequivocally demonstrates that J-51 was intended to prohibit owners receiving the benefits of a J-51 tax abatement from discriminating against tenants who, inter alla, qualify for section 8 rent subsidies. As such, J-51 falls squarely within the section 8 regulation stating that nothing in the section 8 scheme is intended to preempt “operation of State and local laws that prohibit discrimination against a Section 8 voucher-holder because of status as a Section 8 voucher-holder.” (24 CFR 982.53 [d].) Thus, pursuant to the express terms of 24 CFR 982.53 (d), it is unquestionable that the antidiscrimination provisions of the J-51 law are not preempted by any provision of the section 8 law, including 42 USC § 1437f (d) (1) (B) (ii), which eliminated the endless lease requirement.
Based upon the foregoing, any landlord in New York City receiving a J-51 tax abatement is legally mandated under the antidiscrimination protections of the J-51 law to accept and continue accepting a tenant’s section 8 rent subsidy. This holding is consistent with the holding in 4301 Realty LLC v Yurovskaya (Civ Ct, Kings County, Feb. 4, 2005, Index No. L&T 106482/02), which is the only opinion to date to reach this issue.
In the instant actions, four of the five named defendant landlords concede that they are currently receiving significant benefits pursuant to New York City’s J-51 tax abatement program. As determined above, the J-51 law prohibits these defendants from discriminating against any tenant based upon the tenant’s participation in the section 8 program. Thus, such defendants are obligated to continue accepting their tenants’ section 8 rent subsidies, and are not permitted to opt out of section 8, as long as they are receiving the benefits of a J-51 tax abatement. (See 4301 Realty LLC v Yurovskaya, supra.)
*692 VI. New York’s Rent Stabilization Code
Next, the court will consider whether the federal section 8 statute preempts the provisions of New York State’s rent stabilization laws which protect a rent-stabilized tenant’s right to a renewal lease on the same terms and conditions as his or her expired lease. The determination of this issue requires an analysis of the
“three ways in which a Federal law can preempt a State or local law: one, by express provision in the Federal statute; two, by inference, where the Federal legislative scheme is so pervasive and the character of the obligations imposed leaves no room for the State or local government to legislate; and three, to the extent that the State or local law actually conflicts with the Federal law, for example where compliance with both is impossible or adherence to the State or local law would thwart the objectives of its Federal counterpart.” (City of New York v Job-Lot Pushcart, 88 NY2d 163, 167 [1996], cert denied sub nom. JA-RU v City of New York, 519 US 871 [1996].)
A reading of the section 8 statute and regulations reveals no explicit language providing for the preemption of such laws. As previously discussed, the only explicit preemption language in the section 8 statute and regulations merely states that section 8 is not intended to preempt state and local laws prohibiting discrimination against section 8 recipients. (24 CFR 982.53 [d].) Thus, the court must consider whether the section 8 amendment eliminating the endless lease requirement preempts by inference, or conflicts with the lease renewal protections afforded to rent-stabilized tenants under New York State’s rent stabilization laws.
In seeking to opt out of participating in the section 8 program, the defendant landlords are relying on the amendment to the section 8 statute which repealed the endless lease requirement. That amendment added language to the statute which refers to termination “during the term of the lease,” by an “owner” in the most general sense. (42 USC § 1437f [d] [1] [B] [ii].) It cannot be said that the section 8 statute is so comprehensive as to create an inference that Congress intended to leave no room for state or local regulation in the area, and this court is not persuaded that the provisions of section 8 cannot be harmonized with those of the Rent Stabilization Law. (See Matter of Mott v New York State Div. of Hous. & Community Renewal, 211 AD2d *693 147, 152 [2d Dept 1995], appeal dismissed 86 NY2d 836 [1995]; Franklin Tower One, L.L.C. v N.M., 157 NJ 602, 619, 725 A2d 1104, 1113 [Sup Ct 1999].) To the contrary, the section 8 program, has always called for substantial state and local participation. (See Franklin Tower One, L.L.C., 157 NJ at 609-619, 725 A2d at 1107-1113; Attorney Gen. v Brown, 400 Mass 826, 828, 511 NE2d 1103, 1105-1106 [1987].) This conclusion is firmly supported by the legislative history of the section 8 amendments eliminating the endless lease and “take-one, take-all” provisions, as Congress explicitly noted that “protections will be continued under State . . . and local tenant laws.” (S Rep No. 21, 105th Cong, 1st Sess, at 36, reprinted in 1997 WL 282462; S Rep No. 195, 104th Cong, 1st Sess, at 32, reprinted in 1995 WL 768616; Franklin Tower One, L.L.C. v N.M., 157 NJ at 612, 725 A2d at 1109.) The Massachusetts Supreme Court has recognized that “federal housing legislation . . . create[s] the network of subsidized housing law . . . superimposed upon and consciously interdependent with the substructure of local law relating to housing.” (Attorney Gen. v Brown, 400 Mass 826, 831, 511 NE2d 1103, 1107 [1987], supra, quoting Kargman v Sullivan, 552 F2d 2, 11 [1st Cir 1977].)
This court further finds that New York State laws providing rent-stabilized tenants with statutory lease renewal protections do not conflict with the intent of the section 8 amendment eliminating the endless lease requirement. For preemption purposes, a conflict arises when compliance with both the state and federal statutes is physically impossible. (See City of New York v Job-Lot Pushcart, supra at 170.) Here, compliance with the federal section 8 statute and the state rent stabilization laws is not impossible, as, for the reasons discussed below, the text of 42 USC § 1437f is devoid of any requirement that participation in the section 8 program be voluntary. (See Commission on Human Rights & Opportunities v Sullivan Assoc., 250 Conn 763, 773, 739 A2d 238, 246 [1999]; Attorney Gen. v Brown, 400 Mass at 829, 511 NE2d at 1106.)
A conflict resulting in preemption also arises when “the State or local law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.” (City of New York v Job-Lot Pushcart, supra at 170.) New York has both a strong and long-standing public policy of protecting residential tenants as reflected by the provisions of the Rent Stabilization Code which substantially restrict a landlord’s ability to terminate a rent-stabilized tenancy, and require the landlord to offer re *694 newal leases to rent-stabilized, tenants. (See Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 164-166 [1993]; 390 W. End Assoc. v Harel, 298 AD2d 11, 15 [1st Dept 2002].) Unless a landlord is able to satisfy specific statutory criteria permitting nonrenewal or termination, a rent-stabilized tenant is automatically entitled to a renewal lease “on the same terms and conditions as the expired lease.” (RSC § 2522.5 [g] [1]; Roxborough Apts. Corp. v Becker, 296 AD2d 358 [1st Dept 2002]; 17th Holding v Rivera, 195 Misc 2d 531 [App Term, 2d Dept 2002]; Matter of Fishel v New York City Conciliation & Appeals Bd., 123 Misc 2d 841 [Sup Ct, Kings County 1984]; Tann Realty Co. v Thompson, 112 Misc 2d 392 [Civ Ct, Kings County 1981].)
From a historical standpoint, rent regulations were first enacted in New York State in response to what was found to be a severe housing shortage following World War II, caused in large part by the return of war veterans. (Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 164-165 [1993], cert denied 512 US 1213 [1994]; Matter of Devlin v New York State Div. of Hous. & Community Renewal, 309 AD2d 191, 194-195 [1st Dept 2003], lv denied 2 NY3d 705 [2004].) “The Emergency Housing Rent Control Law (L 1946, ch 274) was passed into law in 1946 to provide property owners with a fair return for their investment and at the same time to provide affordable housing accommodations for the general population.” (Id. at 195.) Any housing unit completed prior to February 1, 1947 was subject to the Emergency Housing Rent Control Law. (Id.)
In response to the continuing housing emergency and the need to regulate dwelling units constructed after 1947, the Rent Stabilization Law was enacted in 1969
“to ameliorate, over time, the intractable housing emergency in the City of New York ... By regulating rents and providing occupants with statutory rights to tenancy renewals under rent stabilization—a less onerous form of [rent] regulation’—the State intended to protect dwellers who could not compete in an overheated rental market, through no fault of their own.” (Manocherian v Lenox Hill Hosp., 84 NY2d 385, 389 [1994], cert denied 514 US 1109 [1995], quoting Sullivan v Brevard Assoc., 66 NY2d 489, 494 [1985].)
“The regulation of this field has been maintained ‘to prevent uncertainty, hardship and dislocation,’ and to ‘forestall profiteering, speculation and other disruptive practices.’ ” (Id., quoting Administrative Code § 26-401.)
*695 In light of the foregoing, the lease renewal requirements of the Rent Stabilization Law are not an obstacle to the accomplishments of the objectives of the section 8 rent subsidy program; rather, the federal and state laws advance a common goal, i.e., affordable, decent housing for lower-income families. The essence of the federal section 8 law is aiding low-income residents in obtaining affordable housing, and it was with that precise goal in mind that Congress repealed both the endless lease and “take-one, take-all” requirements, as they were having the unintended effect of discouraging landlords from participating in the section 8 program. (See Franklin Tower One, L.L.C. v N.M., supra.) New York shares that goal, as the lease renewal rights of rent-stabilized tenants are an integral part of the tenant protection laws enacted to protect residential tenants from the effects of what the Legislature has deemed to be a severe shortage of affordable rental housing in New York City.
This determination is consistent with nearly identical issues of preemption addressed by the highest courts in New Jersey (Franklin Tower One, L.L.C. v N.M., supra), Connecticut (Commission on Human Rights & Opportunities v Sullivan Assoc., supra) and Massachusetts (Attorney Gen. v Brown, supra). Each case holds that a state statute prohibiting landlords from discriminating against tenants receiving section 8 subsidies is not preempted by the federal section 8 law. Significantly, after the last of these cases was decided in 1999, a new section 8 regulation was promulgated at 24 CFR 982.53 (d), which expressly provides that section 8 is not intended to preempt state and local laws prohibiting discrimination against section 8 tenants. The addition of this provision reflecting the explicit intent that section 8 does not preempt state and local laws evidences that the holdings in Franklin Tower One, L.L.C. v N.M. (supra), Commission on Human Rights & Opportunities v Sullivan Assoc. (supra) and Attorney Gen. v Brown (supra) are in harmony with the intent of the section 8 statutory scheme.
Moreover, the analysis of the preemption issue in those decisions, albeit not binding on this court, is both instructive and persuasive, particularly as to those courts’ uniform rejection of the landlords’ arguments regarding the voluntary nature of the section 8 program. For example, in Franklin Tower One, L.L.C. v N.M., the issue was whether Congress’ repeal of the “take-one, take-all” requirement of the section 8 statute, which required landlords renting to one section 8 recipient to rent to *696 all otherwise qualified section 8 recipients, preempted a New Jersey law prohibiting discrimination against section 8 recipients. The landlords argued that Congress intended section 8 to be a voluntary program involving voluntary participation by landlords, which would conflict with the New Jersey’s antidiscrimination law, since that law necessarily results in mandating section 8 participation. Rejecting this argument, the New Jersey Supreme Court succinctly states as follows:
“That 42 U.S.C.A. § 1437f does not mandate landlord participation in the Section 8 program is undisputed. However, the voluntary nature of the Section 8 program is not at the heart of the federal scheme. The inference that the program is voluntary derives only from one section of the statute that permits landlords to screen potential tenants, and no language in that provision implies that a landlord’s right to screen tenants includes the right to reject tenants solely on the basis that they are qualified for governmental rental assistance. See 42 U.S.C.A. § 1437f(d)(l)(A).” (Franklin Tower One, L.L.C. v N.M., 157 NJ at 619, 725 A2d at 1113.)
Nothing in the statute, however, mandates that landlord participation in the section 8 program be voluntary, nor is there any provision that prohibits states from mandating participation. That conclusion is supported by the history of 42 USC § 1437f (t), the “take-one, take-all” provision. That provision was enacted to increase the availability of low-income housing. It was repealed only because it was having the unintended effect of discouraging landlords from joining the section 8 program. The goal of Congress, however, has always been to assist in providing housing to low-income tenants. (Franklin Tower One, L.L.C. v N.M., 157 NJ at 619-620, 725 A2d at 1113; accord Commission on Human Rights & Opportunities v Sullivan Assoc., 250 Conn at 772, 739 A2d at 245; Attorney Gen. v Brown, 400 Mass at 830, 511 NE2d at 1106-1107; but see Seminara Pelham, LLC v Formisano, supra.)
In the instant actions, defendant landlords argue that any provision of the Rent Stabilization Law requiring them to renew the lease with the section 8 subsidy is preempted by the section 8 statute, which provides for voluntary participation and no longer mandates an endless lease. Although the holding in Franklin Tower One, L.L.C. v N.M. (supra) is specifically addressed to the elimination of the “take-one, take-all” requirement in the section 8 statute, the legal analysis of the preemption issue is *697 equally applicable to the endless lease requirement at issue here, as both provisions were repealed at the same time and for the same reasons. The legislative history shows the endless lease , and “take-one, take-all” requirements were characterized as the “two key disincentives in current law to owner participation” (House of Representatives Subcommittee on Housing & Community Opportunity, testimony of Christina L. Garcia, on behalf of the National Apartment Association and National Multi Housing Council, Federal Document Clearing House, Inc., Oct. 13, 1995, reprinted in 1995 WL 602577), and that the elimination of these provisions was part of the “key reforms” designed to “encourage greater owner participation.” (S Rep No. 21, 105th Cong, 1st Sess, at 36, reprinted in 1997 WL 282462.)
Thus, with respect to the instant actions, the analysis in Franklin Tower One, L.L.C. v N.M. (supra), as well as Commission on Human Rights & Opportunities v Sullivan Assoc. (supra) and Attorney Gen. v Brown (supra), supports the conclusion that as nothing in the section 8 statutory scheme requires that landlord participation be voluntary, section 8 does not conflict with New York state laws requiring landlords to offer rent-stabilized tenants renewal leases on the same terms and conditions as the expired leases, and, thus, continue accepting tenants’ section 8 rent subsidies. This is not to say that landlords are mandated to participate in section 8, but rather for rent-stabilized tenants, once the landlord accepts section 8 subsidies on their behalf, the lease must be renewed on the same terms and conditions as the expired lease which included the tenants’ section 8 subsidy payments. (See RSC § 2522.5 [g] [1]; Roxborough Apts. Corp. v Becker, supra; 17th Holding v Rivera, supra; Matter of Fishel v New York City Conciliation & Appeals Bd., supra; Tann Realty Co. v Thompson, supra.)
Defendant landlords additionally argue that preemption is warranted to preserve the goal of the amendment to the section 8 statute which repealed the endless lease requirement. This argument is misplaced. The legislative history reveals that Congress amended 42 USC § 1437f (d) (1) (B) (ii) to add “during the term of the lease” in response to complaints from the private apartment industry that the endless lease provision was one of the key disincentives to owner participation in the section 8 program. (See House of Representatives Subcommittee on Housing & Community Opportunity, testimony of Christina L. Garcia, on behalf of the National Apartment Association and *698 National Multi Housing Council, Federal Document Clearing House, Inc., Oct. 13, 1995, reprinted in 1995 WL 602577; Senate Subcommittee on Housing Opportunity & Community Development, testimony of Thomas R. Shuler, on behalf of the National Multi Housing Council and National Apartment Association, Federal Document Clearing House, Inc., Apr. 9, 1997, reprinted in 1997 WL 165570.) A reading of the legislative history shows that Congress’ consideration of this issue was limited to the context of a general category of landlord-tenant relationship that is not subject to state or local regulation of a landlord’s right to terminate or renew the tenancy, where a landlord can freely choose, without cause, not to renew a tenant’s lease once it expires. That type of landlord-tenant relationship is vastly different from the relationship a landlord in New York City has with a tenant residing in an apartment subject to regulation under rent stabilization, as absent a showing as to specific statutory criteria permitting nonrenewal or termination, the landlord is mandated by law to renew a rent-stabilized tenant’s lease. (See Rent Stabilization Assn. of N.Y. City v Higgins, supra; 390 W. End Assoc. v Harel, supra.)
As indicated in the legislative history of the section 8 amendments, the private apartment industry asserted that the endless lease provision
“denies owners their usual option to opt-out of a rental relationship with a tenant, when the lease expires. Outside of Section 8, it is a well-established provision of landlord-tenant law that when a lease expires, both [an] owner and tenant have the option of ending the rental relationship. Owners need this option to protect the value of their investment from tenants who cause losses. Likewise, tenants need the option to opt-out if the owner is providing an inferior product.” (House of Representatives Subcommittee on Housing & Community Opportunity, testimony of Christina L. Garcia, on behalf of the National Apartment Association and National Multi Housing Council, Federal Document Clearing House, Inc., Oct. 13, 1995, reprinted in 1995 WL 602577 [emphasis added]; accord Senate Subcommittee on Housing Opportunity & Community Development, testimony of Thomas R. Shuler, on behalf of the National Multi Housing Council and National Apartment Association, Federal Document Clearing *699 House, Inc., Apr. 9, 1997, reprinted in 1997 WL 165570.)
Thus, the elimination of the endless lease provision was simply intended to assist landlords who would otherwise have the right to terminate their relationship with a tenant, but for the section 8 rule requiring them to renew the lease. Here, in New York City, notwithstanding section 8, landlords who own rent-stabilized apartments are obligated to offer renewal leases to their tenants, and can only terminate or refuse to renew a rent-stabilized tenancy on specific statutory grounds. (See Rent Stabilization Assn. of N.Y. City v Higgins, supra; 390 W. End Assoc. v Harel, supra.) In other words, New York City’s rent-stabilized tenants are provided with statutory protections to ensure renewal and protect against termination. As determined herein, Congress explicitly intended that such state and local laws protecting tenants would continue to do so, even after the endless lease and “take-one, take-all” provisions were repealed. (See S Rep No. 21, 105th Cong, 1st Sess, reprinted in 1997 WL 282462; S Rep No. 195, 104th Cong, 1st Sess, reprinted in 1995 WL 768616; Franklin Tower One, L.L.C. v N.M., 157 NJ at 612, 725 A2d at 1109.)[7]
Thus, for the reasons cited above, this court finds that the elimination of the section 8 endless lease requirement does not preempt the statutory lease renewal protections of New York’s rent stabilization laws.
Finally, the court turns to consideration of plaintiffs rights under rent stabilization, and the question whether they are entitled to rent-stabilized renewal leases with section 8 subsidies.
Plaintiffs are all rent-stabilized tenants entitled to the full range of benefits and protections conferred by the State’s rent stabilization laws, including the automatic right to a renewal *700 lease “on the same terms and conditions as the expired lease.” (RSC § 2522.5 [g] [1]; Roxborough Apts. Corp. v Becker, supra; 17th Holding v Rivera, supra; Matter of Fishel v New York City Conciliation & Appeals Bd., supra; Tann Realty Co. v Thompson, supra.) This court finds that the defendant landlords’ participation in the section 8 program and acceptance of section 8 rent subsidies, on behalf of the plaintiff rent-stabilized tenants, constitutes a material term and condition of the tenants’ expired rent-stabilized leases, within the meaning of RSC § 2522.5 (g) (1), and as such, defendants are obligated to offer plaintiffs renewal leases on those same terms and conditions, which must include the tenants’ section 8 rent subsidies and the landlords’ continued acceptance of those subsidy payments. (See Matter of Fishel v New York City Conciliation & Appeals Bd., supra; Tann Realty Co. v Thompson, supra.)
This conclusion is supported by the section 8 regulations and the language contained in the “HUD-prescribed tenancy addendum,” which all section 8 tenants receive along with a standard form lease. (24 CFR 982.308 [b] [2].)[8] HUD describes a section 8 tenant’s lease as “composed of two parts: [t]he owner’s standard form lease, plus the federal tenancy addendum.” (64 Fed Reg 56894, 56902.) Basically, the HUD tenancy addendum serves to explain the specific terms and conditions of the section 8 voucher program, and states that “[t]he owner is leasing the contract unit to the tenant for occupancy by the tenant’s family with assistance for a tenancy under the Section 8 housing choice voucher program” (111 [a] [emphasis added]). Referring directly to the landlord’s housing assistance payments contract with the public housing authority (PHA), the tenancy addendum states that “[u]nder the HAP contract, the PHA will make housing assistance payments to the owner to assist the tenant in leasing the unit from the owner.” (1i 1 [b].) The addendum explains that “[e]ach month, the PHA will make a housing assistance payment to the owner on behalf of the family . . . [and] [t]he amount of the monthly housing assistance payment will be determined by the PHA.” (1i 5 [b].) As to the tenant, the tenancy addendum explains that “[t]he family is responsible for paying the owner any portion of the rent to *701 owner that is not covered by the PHA housing assistance payment” (1Í 5 [a]) and that “[t]he tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA.” (IT 5 [d].) Also, the section 8 regulations explicitly provide that section 8 tenants “shall have the right to enforce the tenancy addendum against the owner.” (24 CPR 982.308 [¶] [2].)
Applying the section 8 regulations to the instant actions, each plaintiffs lease consists of a standard rent-stabilized lease or lease renewal, plus the HUD tenancy addendum, which is defined as an actual part of the lease.[9] Given the explicit references in the tenancy addendum to the section 8 rent subsidy payments to the landlord, as well as the tenant’s obligation to pay only that portion of the rent not covered by the subsidy, and the tenant’s rights under the regulations to enforce the tenancy addendum against the landlord, this court concludes that the terms of the tenancy addendum and the rent-stabilized lease are so interrelated that the section 8 rent subsidy referenced in the tenancy addendum constitutes a material term and condition of the rent-stabilized lease within the meaning of ESC § 2522.5 (g) (1).
This conclusion is further supported by the unquestionable fact that the prior rent-stabilized leases or lease renewals were executed with section 8 subsidies, and as indicated from the section 8 statute, plaintiffs, who have all qualified for section 8 assistance, could not afford to pay the full amount of the stabilized rent as listed on the leases, without the substantial financial assistance of the subsidies provided by the section 8 program. Given the significance of the section 8 subsidies, this court finds that the section 8 subsidy is a material term and condition of the lease. To hold otherwise would render meaningless and vitiate the statutory right of these rent-stabilized tenants to *702 automatic and continuous renewals of their leases on the same terms as the expired lease, as they still qualify and, therefore, are dependent upon the section 8 subsidy payments to assist them in leasing their rent-stabilized apartments.
Significantly, as explained above, the NYCHA, the local public housing authority charged with administering the section 8 program in New York City and implementing the federal statute and regulations, has issued a formal statement of its legal position and standing policy that “our landlords of occupied rent stabilized apartments must offer a continuation of Section 8 subsidy as a condition of renewal with their tenants,” and that the “Section 8 subsidy constitutes a[n] essential condition for such leases.” (NYCHA Leased Housing Department mem, July 22, 2003 [LHD No. 03-26].) When a case involves an administrative policy implemented by the governmental agency charged with administering the statute, courts will defer to the agency’s interpretation of a statute, as long as it is not irrational or unreasonable. (Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988], rearg denied 73 NY2d 995 [1989]; Matter of 300 W. 49th St. Assoc. v New York State Div. of Hous. & Community Renewal, 212 AD2d 250, 255 [1st Dept 1995].) Here, the NYCHA’s interpretation is entitled to deference, as it is not unreasonable or irrational.
As noted at the beginning of this opinion, there is a split in the courts that have previously resolved the legal questions presented in the instant actions. This court’s determination is consistent with the majority of the opinions from trial level courts in New York City, holding that a landlord is not entitled to opt out of section 8 for rent-stabilized tenants receiving section 8 subsidies. (Ellwood Realty LLC v Polanco, Civ Ct, NY County, Dec. 13, 2004, Index No. 69979/04; Tibout Estates, LLC v Coleman, NYLJ, Oct. 19, 2004, at 20, col 1 [Civ Ct, Bronx County]; M 1849 LLC v Inniss, Civ Ct, Bronx County, Aug. 23, 2004, L&T Index No. 13927/04; Bran-Trav Dev. LLC v Matus, Civ Ct, Kings County, July 27, 2004, L&T Index No. 55013/04; Kouznetski v Verga Assoc., supra; see also Cosmopolitan Assoc. v New York City Dept. of Hous. Preserv. & Dev., Sup Ct, Queens County, May 31, 2005, Index No. 4816/05.) These decisions also hold that the amendment to section 8 eliminating the endless *703 lease provision (42 USC § 1437f [d] [1] [B]) does not preempt New York’s rent stabilization laws.[10]
Opinions reaching the opposite determination, i.e., the landlord is entitled to opt out of section 8 upon expiration of the term of a rent-stabilized lease, are from the City Court of New Rochelle in Westchester County. (Seminara Pelham, LLC v Formisano, supra; Mayco, LLC v Boreland, NYLJ, Jan. 28, 2004, at 20, col 3; 185 Union Ave. Realty Corp. v Harris, NYLJ, July 9, 2003, at 28, col 1; 30 Eastchester LLC v Healy, 2002 NY Slip Op 40066[U] [2002].)[11] Several opinions from courts in New York City rely on and follow 30 Eastchester LLC v Healy (2002 NY Slip Op 40066DJ] [2002]; Cosmopolitan Assoc., LLC v Ortiz, NYLJ, Nov. 12, 2004, at 20, col 1 [Civ Ct, Queens County]; Licht v Moses, 5 Misc 3d 1023[A], 2004 NY Slip Op 51522[U] [Civ Ct, Kings County 2004]).[12] For the reasons indicated above, this court respectfully disagrees with these decisions.
*704 This court, however, does not agree with one distinction that appears to have been created in some of the prior decisions. Notwithstanding the absence of supporting documentation, it is not disputed that all of the tenant plaintiffs have been receiving section 8 benefits from either the outset of their tenancies, or some time thereafter. A number of prior decisions emphasize the fact that the rent-stabilized tenant was a section 8 recipient since the inception of his or her tenancy. (See e.g. Ellwood Realty LLC v Polanco, supra; Tibout Estates, LLC v Coleman, supra; M 1849 LLC v Inniss, supra; Bran-Trav Dev. LLC v Matus, supra.) By inference, these cases suggest that the result might differ had the rent-stabilized tenant become eligible for section 8 benefits only after the commencement of the tenancy. This court, however, is not persuaded that this is a distinction that should make a difference in the ultimate determination, as it would create an inequitable result, by which some section 8 recipients residing in rent-stabilized apartments would have greater protections than others.
VII. Conclusion
In conclusion, this court determines that federal section 8 law eliminating the endless lease requirement does not preempt the provisions of New York City’s J-51 law prohibiting landlords from discriminating against section 8 recipients, nor the provisions of New York’s Rent Stabilization Code giving rent-stabilized tenants the right to a renewal lease on the same terms and conditions as the expired lease, i.e., with the section 8 rent subsidies. Furthermore, this court determines as a matter of law that those defendants receiving J-51 tax benefits are obligated to continue accepting their tenants’ section 8 rent subsidies, and that plaintiffs, as rent-stabilized tenants, are entitled to renewal leases with section 8 rent subsidies, as their section 8 subsidies constitute a material term and condition of their expired leases.
Accordingly, it is hereby ordered that plaintiffs’ consolidated motions for summary judgment are granted; and it is further ordered, adjudged and declared that with respect to plaintiffs, who are rent-stabilized tenants, defendants are obligated to continue accepting section 8 rent subsidies and are not permitted to opt out of the federal section 8 rent subsidy program.

. By a so-ordered stipulation dated November 18, 2004, the parties consented to the consolidation of Lasandra Washington v 509 Realty Co., LLC (Index No. 403005/04) with Sonia Rosario v Diagonal Realty, LLC (Index No. 402448/04). The motion to consolidate Igor Gumanofsky, Candida Cartagena and Sylvia German v Bennet Realty, LCC and Diplomacy Realty, LLC (Index No. 402748/04) with the Rosario action is hereby granted in the absence of opposition. Thus, both the Washington and Gumanofsky actions are consolidated with the Rosario action under the Rosario index number, 402448/04.
The court issued two interim orders dated February 17, 2005 and March 17, 2005, granting the motions of Celeste Verges and Mariete Rosenfeld, respectively, to intervene in the Gumanovsky action and to add Rosenfeld’s landlord as a defendant (6555 Realty, LLC). The caption of the consolidated actions is the caption listed above, which also includes the names of the intervening parties.
The parties have stipulated that plaintiffs’ original motions for preliminary injunctions are converted to motions for summary judgment, as the underlying issue is purely a legal question.
To the extent the relief sought in the outstanding motions has not already been resolved by the court or the parties, the motions are consolidated for disposition herein (Motion Sequence No. 001 in Sonia Rosario v Diagonal Realty, LLC, Index No. 402448/04; Motion Sequence Nos. 001, 002, 003 and 004 in Igor Gumanovsky, Candida Cartagena and Sylvia German v Bennet Realty, LCC and Diplomacy Realty, LLC, Index No. 402748/04; and Motion Sequence Nos. 001 and 002 in Lasandra Washington v 509 Realty Co., LLC, Index No. 403005/04).

. One decision from the First Department of the Appellate Division held that the landlord could regain possession of the tenant’s section 8 apartment, after the section 8 lease expired and the landlord no longer desired to participate in the section 8 program, but in that case the apartment was neither rent stabilized nor rent controlled, and the decision was devoid of a reference to the City’s J-51 tax abatement law. (Matter of Simms v Popolizio, 175 AD2d 62 [1st Dept 1991]; see also Matter of Gwynn v Mulligan, 2003 NY Slip Op 51257[U] [Sup Ct, Westchester County 2003].)

. Although the actions involve seven separate plaintiffs, only five defendant landlords are named in the caption, since plaintiffs Cartegena, German and Vergez reside in the same building and have the same landlord, Diplomacy Realty, LLC.
Plaintiff Washington does not allege that her landlord, defendant 509 Realty Co., LLC, is receiving a J-51 tax abatement. The four other defendant landlords admit that they are receiving J-51 tax abatements.

. The section 8 amendment at issue herein was part of a legislative package of amendments to the section 8 statute, enacted as the Quality Housing and Work Responsibility Act of 1998, which provided for the complete merger of the section 8 tenant-based certificate and voucher programs, into a new housing choice voucher program. (Pub L 105-276, 112 US Stat 2461 [1998].)

. Congress also eliminated the requirement that landlords use a form of lease approved by HUD, and added a provision permitting landlords to use the standard lease form that is used in the locality for nonsection 8 tenants, “plus the HUD-prescribed tenancy addendum.” (42 USC § 1437f [d] [1] [B] [i]; [o] [7]; 24 CFR 982.308 [b] [2].)

. 24 CFR 982.53 (d) continues: “However, such State and local laws shall not change or affect any requirement of this part, or any other HUD requirements for administration or operation of the program.”

. The apartment industry testimony is consistent with this conclusion:
“Eliminating these provisions[, endless lease and ‘take-one, take-all’,] will in no way deny Section 8 recipients the rights and protections provided to non-subsidized residents. All residents Eire protected under the Fair Housing Act, the Americans with Disabilities Act, and state and local resident protections laws. These laws provide a comprehensive set of protections for all residents, both subsidized and non-subsidized.” (Senate Subcommittee on Housing Opportunity & Community Development, testimony of Thomas R Shuler, on behalf of the National Multi Housing Council and National Apartment Association, Federal Document Clearing House, Inc., Apr. 9, 1997, reprinted in 1997 WL 165570.)

. Although plaintiffs have not submitted copies of all lease and lease renewal documents, the current version of the HUD-prescribed tenancy addendum can be found on HUD’s Web site, and is identified as “form HUD-52641-A (3/2000), ref Handbook 7420.8.” The form states that “[pjrevious editions are obsolete.”

. Although the record does not include copies of the actual and current lease documents for all seven plaintiffs, the section 8 regulations define a section 8 tenant’s lease as a standard form lease plus the HUD-prescribed tenancy addendum. (24 CFR 982.308 [b] [2].) The lease documents submitted vary as to the individual plaintiffs and do not include in each instance a rent-stabilized lease or lease renewal, or the tenancy addendum. However, since it is undisputed that the plaintiff tenants all receive section 8 subsidies, and that their apartments, all subject to rent stabilization, under New York law they are entitled to a rent-stabilized lease or lease renewal. Thus, under the section 8 regulations, plaintiffs’ leases must consist of a standard form rent-stabilized lease or lease renewal, plus the HUD tenancy addendum.

. Some of these decisions also rely on the terms of the HAP contract between the landlords and the NYCHA. (See e.g. M 1849 LLC v Inniss, supra [HAP contract a material term and condition of rent-stabilized lease, and must be renewed with lease]; Bran-Trav Dev. LLC v Matus, supra [HAP contract commencing at inception of tenancy remains in effect until tenancy terminated under Rent Stabilization Code]; Ellwood Realty LLC v Polanco, supra [tenant argued terms of HAP contract extends landlord’s participation in section 8 into any extension of lease term]; but see Cosmopolitan Assoc., LLC v Ortiz, NYLJ, Nov. 12, 2004, at 20, col 1 [Civ Ct, Queens County] [HAP contract independent and landlord not obligated to renew HAP contract simply because rent-stabilized lease had to be renewed]; Licht v Moses, 5 Misc 3d 1023[A], 2004 NY Slip Op 51522[U] [Civ Ct, Kings County 2004] [landlord obligation to offer tenant rent-stabilized lease on same terms and conditions as expiring lease, but no concomitant obligation for public housing authority to enter into HAP contract, or for tenant to renew lease; HAP contract cannot stand on its own].) As indicated, however, there is a difference of opinion as to the effect and significance of the HAP contract in relation to a rent-stabilized lease. The parties’ arguments relating to the HAP contract will not be addressed in view of this court’s resolution of the issues on the grounds indicated above.

. These four decisions were rendered by the same judge.

. Defendants also cite to an administrative decision of the New York State Division of Housing and Community Renewal (DHCR), Matter of Administrative Appeal of Highland Mgt. Corp. (Tenant-Precious Byrd) (DHCR, Docket No. QB910041RO, DRO Docket No. PK910001RV). The court is unable to comment on DHCR’s decision, as it is unpublished and no copy is annexed to any of the motion papers. However, based upon a discussion of that decision in Cosmopolitan Assoc., LLC v Ortiz (supra), it appears that DHCR relied on 30 Eastchester LLC v Healy (supra) in finding that the owner was not obligated to offer the tenant a section 8 renewal lease. It is unclear whether a CPLR article 78 proceeding was commenced to challenge DHCR’s determination. In any event, in New York City, the NYCHA, and not DHCR, is the local housing authority charged with administering section 8.